NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK ROLLINS,<br><br>            Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | Civil Action No.: 09-cv-6015 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

Presently before the Court is Plaintiff Mark Rollins' Appeal seeking review of a final determination by Administrative Law Judge ("ALJ") Dennis O'Leary denying his application for disability insurance benefits pursuant to §§ 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act.  This Court has considered the submissions made in support of and in opposition to the instant appeal and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below, the Court finds that the ALJ's determination that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible and that Plaintiff did not suffer from any severe non-exertional limitations is supported by substantial evidence.  Therefore, the use of a vocation expert was not required.  The Court, however, remands for the ALJ to properly address Plaintiff's objection to the post-hearing evidence.

**I.       FACTS AND PROCEDURAL HISTORY**

On October 16, 2007, Plaintiff filed a Title II application for Social Security Disability

Insurance Benefits alleging disability beginning on June 8, 2006. This claim was denied initially and again upon reconsideration. On March 30, 2009, a hearing was held before the ALJ who found that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. Plaintiff subsequently appealed this decision.

At the time of the hearing, Plaintiff was fifty-three (53) years old with a seventh grade education. (R. at 23.) Plaintiff worked in the construction industry from 1992 to 1997. (Id. at 27, 33.) From approximately 1997 to 2000, Plaintiff unsuccessfully attempted to open his own bar. (Id. at 33-34.) In 2000, Plaintiff began work as a mechanic and chemical barrel cleaner for the trucking company, Tunnel Barrel, lifting and carrying weight up to two hundred pounds. (See Id. at 24-25.) Plaintiff's employment with Tunnel Barrel was terminated in June 2006 as a result of Plaintiff's regular dermatologist appointments, discussed below, which caused him to miss work in the mornings three days a week. (Id. at 28-29.) Plaintiff began collecting unemployment for six months after he was terminated and has not been gainfully employed since. (Id. at 33.)

The record indicates that Plaintiff suffers from a history of arthritis of the lumbar spine, type II diabetes, and mycosis fungoides. (Id. at 12.) Plaintiff contends the mycosis fungoides causes excessive itching, swelling and burning sensations on his skin, which is aggravated by exposure to dust or sweat. (Id. at 31.) During his employment with Tunnel Barrel, Plaintiff was treated by his primary physician, Dr. DeCasta. (Id. at 27.) In April 2005, Plaintiff was referred to dermatologist, Dr. Grossier, who diagnosed Plaintiff with the mycosis fungoides after seeing the results of a skin biopsy. (Id. at 149.) As treatment, Dr. Grossier recommended Plaintiff undergo phototherapy three times per week. **(**Id. at 158**.)**

In connection with this action, at the request of his attorney, Plaintiff was examined by Dr. Ahmad and Dr. Latimer in October 2007. (See Id. at 334-339.) After performing an

orthopedic evaluation, Dr. Ahmad determined that Plaintiff suffered from a spinal strain and fibromyositis.  (Id. at 335.)  According to Dr. Ahmad, Plaintiff's disability is 30% of total considering his exertional limitations.  (Id. at 336.)  Dr. Latimer administered a psychological evaluation and concluded that Plaintiff suffered an adjustment disorder as well as severe anxiety and depression.  (Id. at 339.)  According to Dr. Latimer, Plaintiff is totally and permanently disabled as a result of his non-exertional psychological limitations.  (Id.)

At the request of the Social Security Administration, in connection with this action, Plaintiff later underwent an independent physical exam on December 21, 2007 performed by Dr. Wilchfort, and an independent psychiatric evaluation on January 31, 2008 performed by Dr. Arrington.  (See Id. at 340, 349.)  Dr. Wilchfort reported that Plaintiff had diabetes, back pain, and eczema, but that his extremities were normal and no deficits were noted with his range of motion in any extremity.  (Id. at 340-41)  Dr. Wilchfort's diagnosis suggested that Plaintiff had only minor exertional limitations as a result of his impairments.  (See Id.)  Dr. Arrington noted that Plaintiff would have some difficulty with complex tasks, but would have no trouble relating to others or dealing with stress.  (Id. at 351.)  On a daily basis, Plaintiff reported being able to dress, bathe, groom, cook, prepare meals, clean, do laundry, manage money, and drive.  (Id.)  He has good relationships with his family and friends, and enjoys playing sports.  (Id.)  Dr. Arrington's psychiatric evaluation indicated that Plaintiff does not suffer from any severe non-exertional limitations and his overall prognosis was good.  (Id.)

At the request of the ALJ, in April 2009, an independent medical expert, Dr. Fechner, reviewed the record in its entirety and submitted post-hearing medical interrogatories.  (Id. at 392.)  He stated that Plaintiff suffered from mycosis fungoides, arthritis of the lumbar spine and type II diabetes.  (Id.)  Dr. Fechner opined that Plaintiff was capable of a full range of medium

work. (Id. at 394.) On April 8, 2009, the ALJ sent Plaintiff a proffer letter regarding the post-hearing interrogatories, which allowed Plaintiff to request a supplemental hearing or object to the medical interrogatories. (Id. at 119.) Plaintiff did not explicitly request a supplemental hearing in response to the ALJ's proffer letter. However, in a letter dated April 17, 2009, Plaintiff did object to the post-hearing evidence on the grounds that Dr. Fechner did not have a chance to hear from Plaintiff nor did Plaintiff have the opportunity to examine Dr. Fechner. (Id. at 122.)

At steps one and two of Plaintiff's hearing, the ALJ found that Plaintiff had not been involved in any substantial gainful activity and that he suffered from mycosis fungoides, type II diabetes mellitus and lower back pain due to arthritis. (Id. at 12.) At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the federal listings. (Id. at 14.) At step four, the ALJ determined that Plaintiff had a residual functional capacity ('RFC") of being able to perform a full range of medium work, and that he was unable to perform his past relevant work. (Id. at 15.) At step five, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform. (Id.)

## II.   LEGAL STANDARD

### A. Determining Disability

Pursuant to the Social Security Act, a claimant is required to show that he is disabled based on his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Taking into consideration his age, education, and work experience, disability will be evaluated by the claimant's ability to engage in any form of substantial gainful activity existing in the national economy. Id. at § 423(d)(2)(A). If he can perform substantial

gainful activity within the national economy, then he will not be considered disabled. Id. Each claimant's disability is determined individually based on evidence adduced at a hearing. See Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000) (citing Heckler v. Campbell, 461 U.S. 458, 461 (1983)); 42 U.S.C. § 405(b)(1).

The Social Security Administration has developed a five-step process set forth in the Code of Federal Regulations for evaluating the legitimacy of a plaintiff's disability. 20 C.F.R. § 404.1520. At step one, the plaintiff must establish that he is not currently engaging in substantial gainful activity. Id. at § 404.1520(a)(4)(i). If the plaintiff is engaged in substantial gainful activity, the claim for disability benefits will be denied. Id.; see also Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 140 (1987)). At step two, if the plaintiff is not working, he must establish that he suffers from a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the plaintiff fails to demonstrate a severe impairment, the ALJ must deny disability benefits. Id.

If the plaintiff suffers a severe impairment, step three requires the ALJ to determine, based on the medical evidence, whether the impairment matches or is equivalent to a listed impairment found in the "Listing of Impairments" located in 20 C.F.R. § 404, Subpart P, Appendix 1. Id. at 404.1520(a)(4)(iii); see also Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000). If it does, the plaintiff is automatically disabled. 20 C.F.R. § 404.1520(d). The Third Circuit has required that, in determining whether the plaintiff's impairments meet or equal any of the listed impairments, the ALJ identify relevant listed impairments, discuss the evidence, and explain his reasoning. See Burnett, 220 F.3d at 119-20. Conclusory statements at this step of the analysis are inadequate and render the decision "beyond meaningful judicial review." Id. at 119.

If the plaintiff does not suffer from a listed severe impairment or an equivalent, the ALJ proceeds to step four. An step four, the ALJ must consider whether the plaintiff "can still do [his] past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). "This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work." Burnett, 220 F.3d at 120.

The plaintiff "bears the burden of proof for steps one, two and four of [the five-step] test." Sykes, 228 F.3d at 263. Neither side bears the burden of proof in step three because "step three involves a conclusive presumption based on the listings." Id. at 263 n.2 (citing Yuckert, 482 U.S. at 146-47 n.5)).

If the plaintiff cannot perform the past work, the analysis proceeds to step five. In this final step, the burden of production shifts to the Commissioner to determine whether there is any other work in the national economy that the plaintiff can perform. 20 C.F.R. §404.1520(a)(4)(v); see also Sykes, 228 F.3d at 263. In demonstrating that there is existing employment in the national economy that the plaintiff can perform, the ALJ can utilize the medical-vocational guidelines (the "grids") from Appendix 2 of the regulations, which consider age, physical ability, education and work experience. 20 C.F.R. § 404, Subpt. P, App. 2. However, when determining the availability of jobs for plaintiffs with exertional and non-exertional impairments,[1] "the

---

[1] Under the Code of Federal Regulations, impairments can be either exertional or non-exertional. Exertional impairments affect the plaintiff's "ability to meet the strength demands of jobs" in terms of "sitting, standing, walking, lifting, carrying, pushing, and pulling." 20 C.F.R. § 404.1569a. All other impairments are considered non-exertional. Id.; see also Sykes, 228 F.3d at 263.

government cannot satisfy its burden under the Act by reference to the grids alone," because the grids only identify "unskilled jobs in the national economy for claimants with exertional impairments who fit the criteria of the rule at the various functional levels." Sykes, 228 F.3d at 269-70.  Instead, the Commissioner must utilize testimony of a "vocational expert or other similar evidence, such as a learned treatise," to establish whether the plaintiff's non-exertional limitations diminish his residual functional capacity and ability to perform any job in the nation. Id. at 273; see also Burnett, 220 F.3d at 126 ("A step five analysis can be quite fact specific, involving more than simply applying the Grids, including . . . testimony of a vocational expert.").  If this evidence establishes that there is work that the plaintiff can perform, then he is not disabled.

### B.  Standard of Review

"Substantial evidence" is the standard of proof in disability insurance benefit cases. Substantial evidence is "more than a mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  The court has a duty to review the evidence in its totality and decide whether the ALJ's determination was reasonable.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  The court gives deference to the administrative findings and decision, but it also must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence.  See Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). The court, however, is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Sullivan, 970 F.2d at 1182.  To assist the court in this process, an ALJ must explain the rationale behind his decision.  And, where there is conflicting medical evidence,

the ALJ must adequately explain in the record his reasons for rejecting competent evidence. Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986).

### III.   DISCUSSION

#### A.   Summary of the ALJ's Findings

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the onset of his alleged disability on June 8, 2006. (R. at 12.) At step two, the ALJ found that Plaintiff had the following severe impairments: mycosis fungoides, type II diabetes mellitus, and lower back pain due to arthritis. (Id.) However, at step three, the ALJ found that these impairments do not meet or medically equal any of the listed impairments after giving particular attention to the listings for diabetes mellitus and skin cancer found in sections 9.00 and 13.00. (Id. at 14.)

At step four, the ALJ used a two-step process to determine that Plaintiff had the Residual Functioning Capacity ("RFC") to perform a full range of "medium work." (Id.) First, the ALJ determined that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms. (Id. at 15.) Second, the ALJ found that Plaintiff's statements regarding the "intensity, persistence and limiting effects of these symptoms" were not credible based on the entire record, including the objective medical evidence and the testimony of the Plaintiff. (Id.) The ALJ noted that he gave little weight to the findings of Dr. Ahmad, who stated Plaintiff's disability was 30% of total, and Dr. Latimer, who stated that Plaintiff's impairments were so severe as the render him completely disabled because they are unsubstantiated by the record as a whole. (Id. at 16.) The ALJ found that Plaintiff is unable to return to his past relevant work as a construction worker and mechanic because it was performed at a "heavy" exertional level, which involves lifting of over fifty pounds. (Id.)

At step five, considering Plaintiff's age, education, work experience and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff is able to perform. (Id.)

**B.     Analysis**

Plaintiff argues that the ALJ erred in three respects. First, Plaintiff contends that the ALJ did not properly evaluate Plaintiff's subjective complaints as to the severity of his symptoms and, therefore, his determination of Plaintiff's RFC at step four was not based on substantial evidence. Second, Plaintiff argues that the ALJ erred in determining the availability of jobs in the national economy at step five because he did not utilize a vocational expert to assess Plaintiff's alleged non-exertional environmental limitations. Finally, Plaintiff asserts that the ALJ was required to schedule a supplemental hearing in response to Plaintiff's objection to Dr. Fechner's post hearing medical interrogatories, or, at least, should have addressed the objection in the hearing decision

*1. Step Four- Determination of Plaintiff's Credibility*

The first issue before the Court is whether, at step four, the ALJ improperly evaluated the credibility of Plaintiff's testimony as to the severity of his symptoms. In considering the credibility of a plaintiff's subjective complaints, the ALJ should give weight to factors such as the medical reports, the plaintiff's daily activities, the duration and intensity of the symptoms, and the treatments that have been used to relieve the symptoms. 20 C.F.R. §404.1529(c). Furthermore, the ALJ must consider the entire record and give specific reasons for the weight given to each statement. Williams v. Barnhart, 211 Fed.Appx. 101, 104 (3d Cir. 2006).

In his consideration, the ALJ determined that Plaintiff's assertions were not credible based on the following: 1.) Plaintiff testified that he was able to dress, bathe, groom, clean, manage money, drive and play sports on a daily basis; 2.) the objective medical findings do not

reveal limitations to the extent alleged by Plaintiff; and 3.) Plaintiff had stopped taking his medication. (R. at 13-15.) The ALJ concluded that the Plaintiff's daily activities demonstrate his ability to perform many of the basic activities associated with work. (Id.) Furthermore, the medical findings of Dr. Wilchfort and Dr. Fechner both indicated that Plaintiff could physically perform a full range of medium work and Dr. Arrington opined that Plaintiff's overall prognosis was good. (Id. at 13.) Although Dr. Ahmad and Dr. Latimer opined that Plaintiff was disabled, the ALJ gave these conclusions little weight because they were contrary to the other medical evidence and to Plaintiff's daily activities. (Id. at 16.) Furthermore, the ALJ emphasized that the finding of disabled is not a medical, but an administrative finding and, as such, is reserved for the Commissioner. (Id. at 16.) Finally, the fact that Plaintiff did not continue to take his medication further suggests that his symptoms are not as severe as Plaintiff alleges. (See id. at 15.)

As a result, the ALJ determined that although Plaintiff suffered from some severe impairments, the "intensity, persistence, and limiting effects" of Plaintiff's impairments did not preclude him from all work activity. (Id. at 15.) Accordingly, this Court finds that the ALJ's determination of Plaintiff's credibility is based on substantial evidence.

### 2. Step Five- Vocational Expert

At step five, Plaintiff claims that the ALJ should have invoked the testimony of a vocational expert to determine the availability of jobs in the national market. In making such a determination, the ALJ must consider the plaintiff's age, education, work experience, and residual functional capacity. 20 C.F.R. 404.1569; Heckler v. Campbell, 461 U.S. 458, 461-63 (1983). When a Plaintiff has both exertional and non-exertional disabilities, the ALJ may not rely solely on the grids to determine employment availability in the national economy. Sykes,

228 F.3d at 273 (emphasis added).  Instead, the ALJ must utilize a "vocational expert or other similar evidence" in order to make such a determination.  Id.  Without utilizing vocational evidence, an ALJ cannot properly establish whether jobs exist in the national economy for a plaintiff with a combination of exertional and non-exertional impairments.  Id.

Plaintiff asserts that his dermatological condition, mycosis fungoides, causes non-exertional environmental limitations arising from humidity, wetness, dusts, cold and heat.  However, based on the record in its entirety, the ALJ did not find that Plaintiff suffered from any severe non-exertional impairments.  Although the ALJ determined that Plaintiff's skin condition causes itching and dryness, the ALJ determined that Plaintiff's allegations regarding the extent of these symptoms were not credible, and did not find any showing of a severe non-exertional impairment.  (R. at 15.)  As discussed above, the ALJ properly explained the weight he gave to the different medical evidence and to Plaintiff's subjective complaints, and the Court finds that this determination was based on substantial evidence from the record.

When a plaintiff suffers solely from exertional limitations, an ALJ may direct a conclusion of "disabled" or "not disabled" by consulting the grids, considering the plaintiff's age, residual functional capacity, education and work experience.  Allen v. Barnhart, 417 F.3d 396, 402-03 (3d Cir. 2005) (citing Heckler, 461 U.S. at 467-68).  In this case, the ALJ found that Plaintiff has an RFC to perform a full range of medium work, is an individual approaching advanced age, has a limited education, and is able to communicate in English.  (R. at 16-17.)  The ALJ then properly applied Rule 203.18 of the grids to make a determination that Plaintiff is "not disabled." (Id. at 17.)  Thus, as Plaintiff does not have any non-exertional impairments and the ALJ was not required to consult a vocational expert.

*3. Post-Hearing Medical Interrogatories*

Plaintiff argues that the proffering of medical interrogatories to Dr. Fechner after the hearing, without first sending a copy to Plaintiff, constituted an ex parte communication with a potential witness and violated the due process procedures of the SSA's internal policy manual, The Hearings, Appeals and Litigation Law Manual ("HALLEX"). Plaintiff also asserts that the ALJ erred by not scheduling a preliminary hearing or discussing Plaintiff's objections to the post-hearing interrogatories in his decision. Id. Although the use of post-hearing reports is permitted in a social security disability hearing, the Third Circuit has held that the ALJ must give a plaintiff the opportunity to cross-examine the author of such a report if a cross-examination is necessary to obtain "a full and true disclosure of facts." Wallace v. Bowen, 826 F.2d. 187, 192 (3d Cir. 1989) (holding the ALJ erred when he relied on post-hearing evidence without allowing plaintiff to cross-examine author of report); Yahara v. Franklin, No. 92-4083, 1993 U.S. Dist. LEXIS 20276, at *21 (D.N.J. July 14, 1993) (holding that the method of introducing post-hearing evidence violated plaintiff's right to a fair hearing because the lack of opportunity for cross-examination and evidence played major role in ALJ's decision). Waiver of a plaintiff's right to cross-examinations must be "clearly expressed or strongly implied from the circumstances." Id. at 193.

Defendant argues that Plaintiff waived this right when he did not request a hearing in response to the ALJ's proffer letter regarding the interrogatories. Although Plaintiff did not explicitly request a supplemental hearing, he did respond to the ALJ's proffer letter. Similarly to Wallace, Plaintiff "made his objections to the post-hearing reports clear to the ALJ." Id. at 194. Plaintiff responded, "We object. The witness did not have the opportunity to hear what the [Plaintiff] had to say. The witness was not available for examination." (R. at 122.) Because

Plaintiff asserted that he should have been able to confront the witness, it would be erroneous to conclude that the circumstances either clearly expressed or strongly implied waiver. Thus, Plaintiff did not waive his right to cross-examination.

Determining whether cross-examination is required for "a full and true disclosure of the facts" is typically entrusted to the ALJ. Wallace, 826 F2d at 194. However, an ALJ may be held to a stricter standard of review when dealing with post-hearing evidence because it can be more difficult for a plaintiff to properly respond to the post-hearing reports without a chance to present live rebuttal evidence. Id. (determining the standard for requiring cross-examination had been met because ALJ substantially relied on post-hearing reports). In the present case, "the reliance upon evidence adduced outside of [the] hearing without the opportunity for cross-examination could have unfairly affected the ultimate result." Id. After conflicting medical reports were presented during the hearing, the ALJ relied substantially on the post-hearing interrogatories to determine both Plaintiff's impairments and his RFC. In fact, the ALJ determined that Plaintiff had the exact impairments and RFC that Dr. Fechner's report opined: type II diabetes mellitus, mycosis fungoides, and arthritis in the lower back with a RFC capable of a full range of medium work. (R. at 13.) Given the significant weight the ALJ attributed to Dr. Fechner's report, the post-hearing evidence could have improperly affected the result of the trial without the opportunity for cross-examination.

Accordingly, this Court remands the matter for either a supplemental hearing where Plaintiff will be given the opportunity to question Dr. Fechner.

## IV.  CONCLUSION

The Court finds that the ALJ erred by not properly responding to Plaintiff's objection to the post-hearing medical interrogatories.  The Court remands the matter for further analysis in accordance with this Opinion.  An appropriate Order accompanies this Opinion.

DATED: January 6, 2011

/s/ Jose L. Linares
JOSE L. LINARES
UNITED STATES DISTRICT JUDGE